1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

UNITED STATES OF AMERICA,

Plaintiff,

v.

DAJUAN LAMAR GAMBLE,

Defendant.

Case No. 2:22-cr-00267-JAD-EJY

**REPORT AND RECOMMENDATION**

Re:  Motion to Dismiss (ECF No. 27)

10   **I.    Introduction and Summary**.

11          Pending before the Court is the Motion to Dismiss a one count indictment charging

12   Defendant with violations of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).[1]  Defendant argues the United

13   States Supreme Court decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*[2] renders

14   unconstitutional the bar to firearm possession by felons found in § 922(g)(1).[3]  Defendant contends

15   he is among the "people" entitled to own firearms under the Second Amendment irrespective of his

16   prior felony convictions.[4]  Defendant submits that when the *Bruen* test for determining whether a

17   statutory firearm restriction impermissibly burdens Second Amendment rights is applied to §

18   922(g)(1), the statute fails that test.[5]

19          The United States[6] responds to Defendant's Motion by first describing Defendant's long

20   criminal history involving drug offenses, accessory to murder, prohibited ownership of firearms,

21   prohibited use of firearms, and possession of stolen property.[7]  The government then argues neither

22   *Bruen* nor holdings in *Bruen's* predecessor U.S. Supreme Court decisions[8] render § 922(g)(1)

---

[1]     ECF No. 27.  The Court notes that 18 U.S.C. § 924(a)(2) is mentioned only once in Defendant's Motion to Dismiss.  *Id*. at 2.  Defendant offers no argument contending this statute is unconstitutional.  Further, § 924 of the United States Code is not cited at all in Defendant's Reply.  ECF No. 33.
[2]     -- U.S. --, 142 S.Ct. 2111(2022).
[3]     ECF No. 27 at 5.
[4]     *Id*. at 6-7.
[5]     *Id*. at 8-20.
[6]     Hereinafter the "government."
[7]     ECF No. 30 at 5-6.
[8]     *Id*. at 7-12; the predecessor cases include *McDonald v. City of Chicago*, 561 U.S. 742 (2010), and *District of Columbia v. Heller*, 554 U.S. 570 (2008).

1    unconstitutional.  Simply stated, the government submits the Second Amendment does not protect a
2    felon's right to possess a firearm.  The government quotes the Supreme Court holding in *Heller* as
3    establishing that Second Amendment rights do not undermine "longstanding prohibitions on the
4    possession of firearms by felons …."[9]  The government cites the 2010 Supreme Court decision in
5    *McDonald*, reiterating the 2008 *Heller* decision, in which the Court stated that its "holding did not
6    cast doubt on such longstanding regulatory measures as 'prohibition on the possession of firearms
7    by felons ….'"[10]  The government also points to enumerable decisions inside and outside of the
8    Ninth Circuit in which federal courts have determined 18 U.S.C. § 922(g)(1) is constitutional.[11]

9    **II.    Discussion**

10           A.       The *Heller, McDonald, and Bruen Decisions*.

11           The Second Amendment states: "A well regulated Militia, being necessary to the security of
12    a free States, the right of the people to keep and bear Arms, shall not be infringed."  U.S. CONST.
13    AMEND. II.  In *Heller*, the Supreme Court found the Second Amendment "confers an individual right
14    to keep and bear arms ... the core lawful purpose [of which] is self-defense."[12]  However, the *Heller*
15    Court made clear that this right "is not unlimited."[13]  *Heller* refers to "law-abiding citizens" and "law
16    abiding responsible citizens" when addressing to whom its holding applies.[14]  The Court further
17    stated:

18           Although we do not undertake an exhaustive historical analysis today of the full
             scope of the Second Amendment, *nothing in our opinion should be taken to cast*
19           *doubt on longstanding prohibitions on the possession of firearms by felons* and the
             mentally ill, or laws forbidding the carrying of firearms in sensitive places such as
20           schools and government buildings, or laws imposing conditions and qualifications
             on the commercial sale of arms.[15]
21

22

23

---

24    9       ECF No. 30 at 9, *citing Heller*, 544 U.S. at 626.
25    10      *Id*. at 10 *citing McDonald*, 561 U.S. at 786 (internal citation omitted).
      11      *See* citations at ECF No. 30 at 13.
26    12      *Heller*, 554 U.S. at 622, 630.
      13      *Id*. at 626.
27    14      *Id*. at 625 stating: "[f]or most of our history … the Federal Government did not significantly regulate the
      possession of firearms by law-abiding citizens"; and *id* at 635 noting: the Second Amendment protects "the right of law-
28    abiding, responsible citizens to use arms in defense of hearth and home."
      15      *Id*. at 626-27 (emphasis added).

In 2010, the Supreme Court issued the *McDonald* decision holding the Second Amendment applies to the states as well as federal government.[16]  With respect to this case, the Court stated:

> It is important to keep in mind that *Heller,* while striking down a law that prohibited the possession of handguns in the home, recognized that the right to keep and bear arms is not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose. ... We made it clear in *Heller* that our holding *did not cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons* and the mentally ill, laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms. … We repeat those assurances here.[17]

In 2022, the Supreme Court issued *Bruen* that stuck down a New York City licensing scheme in which applications for concealed carry permits could be denied based on an inability to prove "proper cause" to carry a handgun in public.[18]  The *Bruen* Court stated:

> In … *Heller*… and *McDonald* ... we recognized that the Second and Fourteenth Amendments protect the right of an ordinary, *law-abiding citizen* to possess a handgun in the home for self-defense.  In this case, petitioners and respondents agree that ordinary, *law-abiding citizens* have a similar right to carry handguns publicly for their self-defense.  We too agree, and now hold, consistent with *Heller* and *McDonald*, that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home.[19]

The Court then held:

> New York's proper-cause requirement violates the Fourteenth Amendment in that it prevents *law-abiding citizens* with ordinary self-defense needs from exercising their right to keep and bear arms.  We therefore reverse the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.[20]

---

[16]    *McDonald*, 561 U.S at 750 ("We have previously held that most of the provisions of the Bill of Rights apply with full force to both the Federal Government and the States.  Applying the standard that is well established in our case law, we hold that the Second Amendment right is fully applicable to the States.").

[17]    *Id*. at 786 (emphasis added) (internal citations and quote marks from *Heller* omitted).

[18]    *Bruen* rejected the two step approach adopted by the Ninth Circuit, and other federal appellate courts, for evaluating whether a statute impermissibly burdens Second Amendment rights.  *Bruen*, 142 S.Ct. at 2125.  The *Bruen* Court adopted a new legal test explaining that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  To justify its regulation … the government must demonstrate that the regulation is consistent with the Nation's historical tradition of firearm regulation."  *Id.* 2126.  After the government makes that showing a court may "conclude that the individual's conduct falls outside the Second Amendment's unqualified command."  *Id.* at 2126, 2130 (internal quote marks and citation omitted).  To carry its burden, the government must point to "historical precedent from before, during, and after the founding [that] evinces a comparable tradition of regulation."  *Id.* at 2131-32 (internal quotation marks omitted).  However, "even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster."  *Id.* at 2118.  The core question is whether the challenged law and proffered analogues are "relevantly similar."  *Id.* at 2132 (internal citation omitted).  The government need not identify a "historical *twin*"; rather, a "well-established and representative historical *analogue*" suffices.  *Id.* at 2133 (emphasis in original).

[19]    *Id*. at 2122 (emphasis added).

[20]    *Id*. at 2156 (emphasis added).

A review of the *Bruen* Court decision shows it used the phrase "law-abiding citizen" on numerous occasions signaling a clear limitation on its holding.  For example, the Supreme Court in *Bruen*: (i) stated *Heller* and *McDonald* "recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizens to possess a handgun in the home for self-defense"[21]; (ii) concluded the right to possess a handgun outside the home extended to "ordinary, law-abiding citizens"[22]; (iii) instructed courts to consider "how and why … regulations burden a law-abiding citizen's right to armed self-defense"[23]; (iv) described petitioners as "two ordinary, law-abiding, adult citizens"[24]; (v) noted there is no historical traditional "limiting public carry only to those law-abiding citizens who demonstrate a special need for self-defense"[25]; (iv) concluded historical analogues advanced by New York fail because "none operated to prevent law-abiding citizens with ordinary self-defense needs from carrying arms in public for that purpose"[26]; (vii) found no historical record requiring "law-abiding, responsible citizens" to demonstrate a need to obtain a license to carry[27]; and (viii) held New York law violates the Second Amendment because it "prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms."[28]  Writing for the Court, Justice Thomas also stated:

> [N]othing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States' "shall-issue" licensing regimes, under which a general desire for self-defense is sufficient to obtain a [permit].  … Because these licensing regimes do not require applicants to show an atypical need for armed self-defense, they do not necessarily prevent "law-abiding, responsible citizens" from exercising their Second Amendment right to public carry. … *Heller*, 554 U.S. … [at] 635.  Rather, it appears that these shall-issue regimes, which often require applicants to undergo a background check or pass a firearms safety course, are designed to ensure only that those bearing arms in the jurisdiction are, in fact, "law-abiding, responsible citizens."[29]

---

[21] *Id.* at 2122.
[22] *Id.*
[23] *Id.* at 2133.
[24] *Id.* at 2134.
[25] *Id.* at 2138.
[26] *Id.* at 2150.
[27] *Id.* at 2156.
[28] *Id.*
[29] *Id.* at 2138 n.9 (brackets in original, some internal citations and quote marks omitted).

The Court further stated: "[T]he Second Amendment is neither a regulatory straightjacket nor a regulatory blank check."[30]  In his concurring opinion, Justice Kavanaugh reiterated the language from *Heller* in which Justice Scalia stated: "[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill …."[31]

B.    *United States v. Vongxay Was Not Abrogated by Heller, McDonald, or Bruen*.

Defendant argues the holding in *Bruen* "abrogate[d] all prior Ninth Circuit decisions— indeed, all federal court of appeals decisions everywhere—about firearms restrictions," including *United States v. Vongxay*.[32]  The government submits the Justices' "statements in *Bruen* … confirm that it is not 'clearly irreconcilable' with *Vongxay*."[33]

The U.S. District Court for the District of Nevada is bound by Ninth Circuit precedent unless that precedent is "effectively overruled," which occurs when "the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority."[34]  "The clearly irreconcilable requirement is a high standard."[35]  "[I]t is not enough for there to be some tension between the intervening higher authority and prior circuit precedent, or for the intervening higher authority to cast doubt on the prior circuit precedent."[36]

As other district courts in the Ninth Circuit have found, this Court finds *Vongxay* is not clearly irreconcilable with *Heller*, *McDonald* or *Bruen* as nothing in these opinions "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons."[37]  There is

---

[30]    *Id.* at 2133 (majority opinion); 2162 (Kavanaugh, J., Concurring).

[31]    *Id*. at 2162 (Kavanaugh J. Concurring) *citing Heller*, 554 U.S. at 626-27 and n.26 (citations and quote marks omitted), and *McDonald*, 561 U.S. at 786 (plurality opinion).  *See also* Justice Alito's concurring opinion in which he states "[n]or have we disturbed anything that we said in *Heller* or *McDonald* …."  *Id*. at 2157 (Alito, J., Concurring) (citation omitted).

Further, to the extent that the above cited statements by the Supreme Court are considered dicta, this Court finds the repeated dicta is of significant importance as strongly demonstrating the likelihood of the Court's future holding.  *United States v. Montero-Camargo*, 208 F.3d 1122, 1132 n.17 (9th Cir. 2000) (en banc) (quoting *Zal v. Steppe*, 968 F.2d 924, 935 (9th Cir. 1992) (Noonan, J., Concurring and Dissenting) ("Supreme Court dicta have a weight that is greater than ordinary judicial dicta as prophecy of what that Court might hold," and courts can "not blandly shrug them off because they were not a holding.").

[32]    594 F.3d 1111 (9th Cir. 2010); ECF No. 27 at 4.

[33]    ECF No. 30 at 12.

[34]    *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc).

[35]    *Close v. Sotheby's, Inc.*, 894 F.3d 1061, 1073 (9th Cir. 2018) (internal citation and quote marks omitted).

[36]    *Id.* (internal citation and quote marks omitted).

[37]    *Heller*, 554 U.S. at 626; *Bruen*, 142 S.Ct. at 2162 (Kavanaugh, J., Concurring).  *See also McDonald*, 561 U.S. at 786.

1   nothing in these opinions that is irreconcilable with finding 18 U.S.C. § 922(g)(1) is constitutional—
2   the holding adopted in *Vongxay*.[38]

3       The analysis scheme adopted by *Bruen* requires the determination of whether the plain text
4   of the Second Amendment covers the conduct at issue—here, a felon's right to possess a firearm.[39]
5   The Supreme Court decisions in *Heller* and *McDonald* unmistakably portend, the plain text of the
6   Second Amendment does not reach protection of a felon's firearm possession.[40]  The *Bruen* decision
7   confirms this interpretation of the Amendment through Justices Kavanaugh and Alito's adoption of
8   *Heller* and *McDonald*'s language signaling what the Court would hold if presented with a §
9   922(g)(1) challenge.[41]   Nonetheless, even if the language in *Heller*, adopted by *McDonald* and
10  *Bruen*, was misinterpreted by the Ninth Circuit in *Vongxay*, the court justified the statute by
11  demonstrating "it is consistent with the Nation's historical tradition of firearm regulation."[42]

12      While it is true the court in *Vongxay* did not explicitly discuss whether the plain text of the
13  Second Amendment reaches felons in possession, the court performed the second part of the *Bruen*
14  test, which was done to demonstrate § 922(g)(1) is consistent with the Nation's historical regulations
15  of firearms.  The court in *Vongxay* noted "no court that has examined *Heller* has found 18 U.S.C. §
16  922(g)(1) constitutionally suspect."[43]  The court discussed that prohibiting felons from bearing arms
17  is "consistent with the explicit purpose of the Second Amendment to maintain 'the security of a free
18  State.'"[44]  And, the court stated:

19          We observe that most scholars of the Second Amendment agree that the right to
20          bear arms was "inextricably ... tied to" the concept of a "virtuous citizen[ry]" that
            would protect society through "defensive use of arms against criminals, oppressive
            officials, and foreign enemies alike," and that "the right to bear arms does not
21          preclude laws disarming the unvirtuous citizens (i.e. criminal) ...."[45]

22

23      [38]    *Vongxay*, 594 F.3d at 1116 ("[o]ur examination ... of historical gun restrictions ... lends credence to the post-
    Heller viability" of the previous determination that 18 U.S.C. § 922(g)(1) does not violate the Second Amendment)
24  (citation omitted).
        [39]    *See* n.18.
25      [40]    *Heller*, 554 U.S. at 266; *McDonald*, 561 U.S. at 786
        [41]    *See* n.31.
26      [42]    *Bruen*, 142 S.Ct. at 2126
        [43]    *Vongxay*, 594 F.3d at 1117 (citations omitted).
27      [44]    *Id. quoting* U.S. CONST. AMEND. II.
        [45]    *Vongxay*, 594 F.3d at 1118 (quoting Don B. Kates, Jr., *The Second Amendment: A Dialogue*, 49 Law &
28  Contemp. Probs. 143, 146 (1986)); and Glenn Harlan Reynolds, *A Critical Guide to the Second Amendment*, 62 Tenn.
    L. Rev. 461, 480 (1995).

1   The District Court of Idaho observed that "[a]t least five justices indicated their explicit intent

2   contrary" to Defendant's argument that *Bruen* overruled *Vongxay*.[46]  The Idaho court also noted the

3   Ninth Circuit's "reasoning in *Vongxay*" adopts a two step approach "consistent with the critical

4   second prong" of the *Bruen* test.[47]   That court went on to state "[m]ore importantly, *Bruen's*

5   reasoning is not clearly irreconcilable with the reasoning in *Vongxay* and *Heller*."[48]  The Districts of

6   Montana and Nevada agree that *Bruen* did not overrule *Vongxay*.[49]  These decisions, along with the

7   discussion in *Vongxay* summarized above, confirm the holding in *Vongxay* is not clearly

8   irreconcilable with and, therefore, was not abrogated by *Bruen*.

9         C.     18 U.S.C. § 922(g)(1) is Not Unconstitutional.

10        Defendant contends his indictment for unlawful possession of a firearm must be dismissed

11  because he is one of the "people" covered by the Second Amendment, and 18 U.S.C. § 922(g)(1)

12  impermissibly infringes on this constitutional right.[50]  In contrast, three Supreme Court decisions

13  regarding Second Amendment rights, *Heller*, *McDonald*, and *Bruen*, state that nothing about these

14  decisions is meant to be interpreted as undermining the longstanding prohibitions on the possession

15  of firearms by felons.[51]  The Ninth Circuit decision in *Vongxay* reached this same conclusion albeit

16  based solely on *Heller*, which was later adopted by *McDonald* and *Bruen*.[52]  *Vongxay* was affirmed

17  in 2016, after the 2010 *McDonald* decision, at which time the Ninth Circuit stated: "Our decision in

18  *Vongxay* forecloses … [the defendant's] argument, and we accordingly affirm the district court's

19  denial of … [the defendant's] motion to dismiss the indictment" under 18 U.S.C. § 922(g)(1).[53]  In

20  2023, the Eastern District of California cited *Heller* as "affirm[ing] … the constitutionality of

---

46    *United States v. Siddoway*, Case No. 1:21-cr-00205-BLW, 2022 WL 4482739, at *1 (D. Idaho Sept. 27, 2022).
47    *Id.* at *2.
48    *Id. See also United States v. Chatman*, Case Nos. 22-cr-00453-CRB-1, 14-cr-00552-CRB-1, 2023 WL 3509699 (N.D. Cal. May 16, 2023); *United States v. Davis*, Case No. 1:21-cr-00206-ADA-BAM-1, 2023 WL 2505039, at **3-4 (E.D. Cal. Mar. 14, 2023).
49    *See United States v. Butts*, -- F.Supp.3d --, 2022 WL 16553037, at *4 (D. Mt. Oct. 31, 2022) *citing Siddoway*, 2022 WL 4482739, at *2; *United States v. Martinez*, Case No. 2:21-cr-00219-APG-DJA, 2023 WL 3687726, at *3 (D. Nev. May 22, 2023) ("Even before *Bruen*, the Ninth Circuit examined the historical tradition of gun regulation to conclude that Section 922(g)(1) is consistent with the Second Amendment.  *See Vongxay*, 594 F.3d at 1116-18.  This Court finds that *Bruen* is not clearly irreconcilable with the reasoning in *Heller* or *Vongxay*.") (Internal citation altered).
50    As stated above, other than one mention of 18 U.S.C. § 924(a)(2) under which Defendant is also charged, Defendant offers no analysis of this statute under any Supreme Court decision.  *See* ECF No. 267, *generally*.
51    *See* n.37.
52    *Id.*; *Vongxay*, 594 F.3d at 1116.
53    *United States v. Phillips*, 827 F.3d 1171, 1174 (9th Cir. 2016).

7

'longstanding prohibitions on the possession of firearms by felons" and stated "[t]he [Supreme] Court did not hold otherwise in *Bruen*."[54]    In addition to these cases, there are numerous others federal court decisions rejecting constitutional challenges to § 922(g) before and after *Bruen*.[55]

Ultimately, the government correctly argues the plain text of the Second Amendment does not protect gun possession by felons; however, even if it does, § 922(g)(1) is consistent with the Nation's historical tradition of firearms regulation.    First, the government points to the Crimes Act of 1790 §§ 3 and 8-10, 1 Stat. 113-14 in which serious offenses of murder and robbery were punishable by death.[56]    The government makes the logical argument that given such punishment, it was unnecessary to adopt "a collateral consequence" of forfeiting the right to gun ownerships.[57]    The government then looks to the reasoning in *Heller* in which the Supreme Court rejected the notion that the Second Amendment ever reached the right to "keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."[58]    The *Heller* Court also stated, "[f]or example, the majority of 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues."[59]

---

[54]    *United States v. Guthery*, Case No. 2:22-cr-00173-KJM, 2023 WL 2696824, at *4 (E.D. Cal. Mar. 29, 2023). *See also Davis*, 2023 WL 2505039, at **3-4.

[55]    *Martinez*, 2023 WL 3687726, at *3; *United States v. Isaac*, Case No. 5:22-cr-117-LCB-HNJ-1, 2023 WL 1415597 (N. D. Ala. Jan. 31, 2023); *United States v. Gray*, Case No. 22-cr-00247-CNS, 2022 WL 16855696 (D. Colo. Nov. 10, 2022); *United States v. Young*, -- F.Supp.3d --, 2022 WL 16829260 (W.D. Pa. Nov. 7, 2022); *Butts*, 2022 WL 16553037 at *4; *Siddoway*, 2022 WL 4482739; *United States v. Minter*, -- F.Supp.3d --, 2022 WL 10662252 (M.D. Pa. Oct. 18, 2022); *United States v. Delpriore*, -- F.Supp.3d --, 2022 WL17490771 (D. Alaska Oct. 4, 2022); *United States v. Charles*, -- F.Supp.3d --, 2022 WL 4913900 (W.D. Tex. Oct. 3, 2022); *United States v. Campbell*, Case No. CR-22-cr-138, 2022 WL 17492255 (W.D. Okla. Sept. 27, 2022); *United States v. Perez*, Case No. 3:21-cr-508, 2022 WL 17484969 (S.D. Cal. Sept. 26, 2022); *United States v. Collette*, Case No. 22-cr-141, 2022 WL 4476790 (W.D. Tex. Sept. 25, 2022); *United States v. Cockerham*, Case No. 5:21-cr-6, 2022 WL 4229314 (S.D. Miss. Sept. 13, 2022); *United States v. Doty*, Case No. 5:21-cr-21, 2022 WL 17492260 (N.D. W.Va. Sept. 9, 2022); *United States v. Burrell*, Case No. 3:21-cr-20395, 2022 WL 4096865 (E.D. Mich. Sept. 7, 2022); *United States v. Nevens*, Case No. 2:19-cr-774, 2022 WL 17492196 (C.D. Cal. Aug. 15, 2022); *United States v. Ramos*, Case No. 2:21-cr-395, 2022 WL 17491967 (C.D. Cal. Aug. 5, 2022); *United States v. Hill*, 629 F.Supp.3d 1027 (S.D. Cal. 2022); *United States v. Ingram*, 623 F.Supp.3d 660 (D.S.C. 2022).  Most recently the Southern District of Florida also considered the issue finding that "*every federal judge* who has considered this question since *Bruen* has upheld the continued validity of § 922(g)(1)." *United States v. Meyer*, Case No. 22-10012-CR, 2023 WL 3318492, at *1 (S.D. Fla. May 9, 2023) (emphasis in original).

[56]    ECF No. 30 at 14.

[57]    *Id*. at 15.

[58]    *Heller*, 554 U.S. at 626 *citing Sheldon*, in 5 Blume 346; Rawle 123; Pomeroy 152-153; Abbott 333.

[59]    *Id*. *citing State v. Chandler*, 5 La. Ann., at 489-490; *Nunn v. State*, 1 Ga., at 251; 2 Kent *340, n.2; The American Students' Blackstone 84, n.11 (G. Chase ed. 1884).

The government submits history demonstrates "gun rights of certain groups have been categorically limited to promote public safety."[60]  The government points the Court to the *Address and Reasons of Dissent of the Minority of the Convention of the State of Pennsylvania to their Constituents*, in which the report stated: "citizens have a personal right to bear arms unless for crimes committed, or real danger of public injury."[61]  The government goes on to cite a similar amendment offered by Samuel Adams to the Massachusetts convention to ratify the U.S. Constitution, and a Seventh Circuit case stating "[m]any of the states, who own constitutions entitled citizens to be armed, did not extend this right to persons convicted of crime."[62]  Finally, the government points out that conviction of a crime has led to curtailment of other rights including the fundamental right to vote, the right to serve on a jury, and the right to hold public office.[63]  Based on the foregoing, the Court finds the government has met its burden to justify 18 U.S.C. § 922(g)(1) it is consistent with the Nation's historical tradition of firearm regulation and there is not unconstitutional.  The conduct with which Defendant is charged falls outside the Second Amendment's unqualified command.

## III.    Conclusion

Based on (1) the totality of the information presented, (2) the consistent statements by the Supreme Court that its decisions in *Heller*, *McDonald*, and *Bruen* did not alter the longstanding prohibition against felons possessing firearms, and (3) the *Heller*, *McDonald*, and *Bruen* did not

---

[60]    ECF No. 30 at 15 *citing*: "Thomas M. Cooley's 1868 treatise, which *Heller* described as 'massively popular,' 554 U.S. at 616, explained that some classes of people were 'almost universally excluded' from exercising certain civic rights, including 'the idiot, the lunatic, and *the felon*, on obvious grounds.'  Thomas M. Cooley, *A Treatise on the Constitutional Limitations Which Rest Upon the Legislative Power of the States of the American Union*, 29 (1st ed. 1868) (emphasis added [by the government]).  The Second Amendment incorporates 'a common-law tradition that permits restrictions directed at citizens who are not law-abiding and responsible' and 'does not preclude laws disarming the unvirtuous (i.e. criminals).'  *United States v. Bena*, 664 F.3d 1180, 1183-84 (8th Cir. 2011) (quoting Don B. Kates, Jr., *The Second Amendment: A Dialogue, Law & Contemp. Probs.*, Winter 1986 at 146 (1986)); *see also United States v. Rene E.*, 583 F.3d 8, 15-16 (1st Cir. 2009) ('Perhaps the most accurate way to describe the dominant understanding of the right to bear arms in the Founding era is as a civic right ... limited to those members of the polity who were deemed capable of exercising it in a virtuous manner.' (quoting Saul Cornell, '*Don't Know Much About History:*' *The Current Crisis in Second Amendment Scholarship*, 29 N. Ky. L. Rev. 657, 679 (2002))."

[61]    ECF No. 30 at 17 *citing*, 2 Bernard Schwartz, *The Bill of Rights: A Documentary History*, 662, 665 (1971) (emphasis removed).

[62]    *Id*. *citing* Schwartz, *The Bill of Rights* at 674–75, 681; *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc).

[63]    *Id*. at 17 *citing Richardson v. Ramirez*, 418 U.S. 24, 56 (1974); 28 U.S.C. § 1865(b)(5); and *Spencer v. Kemna*, 523 U.S. 1, 8-9 (1998).

abrogate the Ninth Circuit's holding in *Vongxay*, the Court finds 18 U.S.C. § 922(g)(1), and by extension § 924(a)(2), are not unconstitutional burdens on Defendant's Second Amendment rights.

**IV.    Recommendation**

IT IS THEREFORE RECOMMENDED that Defendant's Motion to Dismiss (ECF No. 27) be DENIED.

Dated this 17th day of July, 2023.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

### NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).