UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DAJUAN LAMAR GAMBLE,<br><br>　　　　Defendant. | Case No. 2:22-cr-00267-JAD-EJY<br><br>**REPORT AND RECOMMENDATION**<br><br>Re:  Motion to Dismiss for Spoliation of Evidence (ECF No. 28) |

**I.    Introduction and Summary**.

This matter comes before the Court on Defendant's Motion to Dismiss that part of the one count indictment filed against him alleging felon in possession of a firearm—a rifle.[1] It is not disputed that Defendant is a convicted felon and that a rifle was recovered by Las Vegas Metropolitan Police Department ("Metro" or the "LVMPD") on September 1, 2022—the date of the alleged offense.[2] Plaintiff claims Metro failed to swab a black bag, as well as the rifle and magazines found inside the bag, for DNA or fingerprints thus destroying "potentially useful evidence" in violation of Defendant's due process rights.[3] If his Motion to Dismiss for Spoliation is denied, Defendant asks the Court to issue an adverse jury instruction because the United States[4] was obligated to collect and preserve "forensic evidence and make it available" to Defendant upon his request, which the government failed to do.[5] After balancing the government's conduct against the degree of prejudice to Defendant, Defendant concludes an adverse inference instruction is warranted.[6]

---

[1]  ECF Nos. 14 and 28.  The indictment also alleges Defendant unlawfully possessed a handgun, a charge Defendant does not seek to dismiss.  *Id*.
[2]  *Id*.
[3]  ECF No. 28 at 4-6.
[4]  The United States Government is referred to herein as the "government."
[5]  ECF No. 28 at 7-8.
[6]  *Id*. at 8-9.

1

The government responds that in the absence of bad faith the charge alleging felon in possession of the rifle cannot be dismissed.[7]  The government argues Defendant "cannot demonstrate" that either the original decisions "not to submit the rifle for testing" or the subsequent handling of the rifle "was the result of 'official animus' toward him by the government."[8]  The government also submits Defendant cannot show "the evidence was potentially exculpatory and material."[9]

With respect to the requested remedial jury instruction, the government argues there is nothing demonstrating Defendant's DNA was on the rifle when it was gathered as evidence and, therefore, there is nothing to support the conclusion that evidence was lost or destroyed.[10]  The government argues that if the rifle is tested now, and no DNA matching Defendant's DNA is found or too many DNA contributors are found to "make a meaningful comparison," Defendant is "in no better position" than he is without testing because "[t]he absence of trace DNA does not show that a person did not touch an object."[11]  The government argues if Defendant's DNA is found on the rifle, this is not exculpatory and places Defendant in a "considerably worse position."[12]  The government further asserts the outcome of any DNA testing is speculative defeating Defendant's arguments; the presence of trace DNA matching Defendant's DNA is not central to the case; and the absence of DNA evidence favors Defendant as he can argue at trial that there is no DNA evidence connecting him to the rifle.[13]  The government concludes the balancing test shows the remedial instruction requested by Defendant is not warranted.[14]

**II.   Discussion**

   **A.   Summary of the Law**.

Due process requires the government to preserve evidence "that might be expected to play a significant role in a suspect's defense."[15]  To demonstrate the "destruction of evidence … rise[s] to

---

[7] ECF No. 31 at 8.
[8] *Id*. at 11.
[9] *Id*.
[10] *Id*. at 12.
[11] *Id*.
[12] *Id*. at 12-13.
[13] *Id*. at 13.
[14] *Id*.
[15] *California v. Trombetta*, 467 U.S. 479, 488 (1984).

the level of a constitutional violation, a party must make two showings."[16] First, the defendant must show "the government acted in bad faith, the presence of absence of which 'turns on the government's knowledge of the apparent exculpatory value of the evidence at the time it was destroyed.'"[17] Second, the defendant must also show the missing evidence was "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."[18]

A finding of bad faith requires the defendant to demonstrate "more than mere negligence or recklessness."[19] Absent bad faith by law enforcement, the "failure to preserve potentially useful evidence does not constitute a denial of due process of law."[20] "[R]equiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, *i.e.*, those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant."[21] In order to meet this standard, the "exculpatory nature [of the evidence] must be apparent."[22] "[T]he fact that the evidence may have proven exculpatory … does not render it per se material."[23] In fact, critical to this case, "[t]he mere failure to preserve evidence which could have been subjected to tests which might have exonerated the defendant does not constitute a due process violation."[24]

In *Nicolaas v. Pace*, the Western District of Washington considered a 42 U.S.C. § 1983 claim alleging the defendants violated the plaintiff's "constitutional rights by not sooner obtaining the

---

[16] *U.S. v. Sivilla*, 714 F.3d 1168, 1172 (9th Cir. 2013).
[17] *Id.* citing *United States v. Cooper*, 983 F.2d 928, 931 (9th Cir. 1993) *citing Arizona v. Youngblood*, 488 U.S. 51, 56-57 (1988).
[18] *Id.* citing *Trombetta*, 467 U.S. at 489; *Cooper*, 983 F.2d 931 (internal quote marks omitted).
[19] *United States v. Flyer*, 633 F.3d 911, 916 (9th Cir. 2011).
[20] *Phillips v. Woodford*, 267 F.3d 966, 986-87 (9th Cir. 2001) *quoting Youngblood*, 488 U.S. at 58.
[21] *Youngblood*, 488 U.S. at 58.
[22] *Sivilla*, 714 F.3d at 1172 citing *United States v. Del Toro-Barboza*, 673 F.3d 1136, 1149 (9th Cir. 2012).
[23] *United States v. Martinez-Martinez*, 369 F.3d 1076, 1087 (9th Cir. 2004). *See also Portee v. Alvarado*, Case No. C 08-3566 RS (PR), 2011 WL 4079055, at *2 (N.D. Cal. Sept. 13, 2011) *citing Youngblood*, 488 U.S. at 57. ("The exculpatory value of the evidence must be 'apparent'; the possibility that evidence could have exculpated a defendant if preserved and tested is insufficient to satisfy the standard of constitutional materiality in *Trombetta*.").
[24] *United States v. Hernandez*, 109 F.3d 1450, 1455 (9th Cir. 1997) ("[t]he mere failure to preserve evidence which could have been subjected to tests which might have exonerated the defendant does not constitute a due process violation) *citing Youngblood*, 488 U.S. 51 and *Mitchell v. Goldsmith*, 878 F.2d 319, 321 (9th Cir. 1989).

DNA tests that exonerated him."[25] Although a motion for summary judgment was pending, the court framed the issue as a pure legal one: "Whether there is any constitutional requirement for police officers to conduct or commission tests on DNA they extract from suspects."[26] Noting that neither the defendant nor his counsel ever asked for DNA tests on the stolen property at issue, and that there is a limited Due Process right to obtain DNA tests post-conviction, the court stated it was "aware of no authority establishing a constitutional right to access to DNA evidence before trial."[27] The court further found "no court has entertained the notion that police *must* test DNA evidence. Police *may* conduct DNA tests … [and i]f the tests results are exculpatory, a prosecutor has a constitutional obligation" under *Brady v. Maryland*.[28] However, "[n]either *Brady* nor any other precedent of which the court is aware requires DNA tests."[29] The court cited to *United States v. Tadros*, a Seventh Circuit decision, stating the court "rejected the notion that a defendant can require the government to investigate a case as the defendant prefers."[30] Finally the Western District of Washington stated that where police choose "in bad faith not to perform DNA tests that they believed would be exculpatory, the court might inquire more deeply into what the Constitution requires."[31]

In *U.S. v. Drake*, the Ninth Circuit addressed, *inter alia*, a Speedy Trial Act motion and failure to maintain and produce alleged exculpatory evidence.[32] In that case, the defendant allegedly robbed a minimart captured on video.[33] When the officer tried to obtain a copy of the video, they received a "floppy disc containing fourteen" still images.[34] Thirty days after the original recording

---

[25] *Nicolaas v. Pace*, Case No. C12-1357RAJ, 2013 WL 4519603, at *2 (W.D. Wash. Aug. 26, 2013).
[26] *Id*. at *3.
[27] *Id*. (citations omitted).
[28] *Id*. citing *Brady v. Maryland*, 373 U.S. 83 (1963) (emphasis in original).
[29] *Id*.
[30] *Id*. citing *United States v. Tadros*, 301 F.3d 999, 1005 (9th Cir. 2002) (stating "*Brady* prohibits suppression of evidence, it does not require the government to act as a private investigator and valet for the defendant, gathering evidence and delivering it to opposing counsel."). *See also Miller v. Vasquez*, 868 F.2d 1116, 1119 (9th Cir. 1989), in which police failed to collect evidence of a potential sexual assault despite the victim telling investigating officers, hours after the assault, there was a blood stain on her jacket. The victim subsequently washed the jacket destroying the evidence. *Id*. at 1117. The Ninth Circuit stated the defendant had not "cited a case, nor have we found one, which holds that the due process clause is violated when the police fail to gather potentially exculpatory evidence. On the contrary, the cases we discovered hold to the contrary." *Id*. at 1119. After discussing the Supreme Court's then-recent decision in *Youngblood*, the court noted, as in *Youngblood*, "the evidence which the police failed to gather was only potentially exculpatory." *Id*. at 1120.
[31] *Id*. at 4 citing *Youngblood*, 488 U.S. at 58.
[32] 543 F.3d 1080 (9th Cir. 2008).
[33] *Id*. at 1083.
[34] *Id*.

4

of the robbery, the system at the minimart automatically deleted the video, which was permanently lost.[35] The Ninth Circuit found the defendant did not demonstrate the video had "exculpatory value that was apparent before the evidence was destroyed."[36] The court stated "[t]he exculpatory value of an item of evidence is not 'apparent' when the evidence merely '*could have*' exculpated the defendant."[37] Similar to the government's argument in this case, the court stated "[t]he digital recording of the robbery … was far from clearly exculpatory; indeed, it is possible that it would have further incriminated" the defendant.[38]

        B.    <u>Failure To Test The Rifle In The Black Bag Resting On Top Of The Pistol Found In The Economy Hotel Boiler Room At The Time Of Defendant's Arrest Does Not Violate Defendant's Due Process Rights.</u>[39]

There is no factual dispute that surveillance photographs attached to the Declaration of Warrant/Summons (Exhibit A to Defendant's Motion) show Defendant carrying a black bag on September 1, 2022 at approximately 5:21:30 p.m. outside rooms located at the Economy Hotel on East Freemont Street in Las Vegas, Nevada.[40] There is also no dispute that after Metro was called because of a shooting at the hotel, and after a warrant was issued, a pistol and black bag, sitting on top of the pistol, containing a rifle, magazines, and ammunition were collected from the floor of the hotel's boiler room.[41] The government does not dispute that a decision was made not to submit the rifle for DNA testing.[42] Defendant does not contend he requested access to the bag and rifle to perform his own DNA tests.[43]

The government explains that when the rifle was found it "was missing the dust cover, a piece that encloses part of the operating mechanism of the rifle" creating the question of "whether

---

[35] *Id.*
[36] *Id.* at 1089.
[37] *Id.* (emphasis in original).
[38] *Id.* at 1090. The court also held comparable evidence was available in the form of still photographs. *Id.*
[39] As discussed below, the black bag in which the rifle was found is currently undergoing DNA testing.
[40] ECF No. 28-2 at 41-42.
[41] ECF No. 28 at 2 ("[a]pproximately 10 minutes after the shooting, surveillance video showed … [Defendant] leaving unit 114 of the Economy Hotel with a black bag …"); *id.* at 3 (discussing the discovery of the "black bag sitting on top of the pistol inside the boiler room … [with] the barrel of the rifle poking out of the … bag"); *id.* (discussing Metro obtaining a phone warrant and collecting evidence including the pistol and black bag). *See also* ECF No. 31 at 3.
[42] ECF No. 31 at 5. Defendant is not charged with possession of ammunition or magazines; thus, whether these items were test for DNA evidence is not at issue. ECF No. 14.
[43] *See* ECF No. 28 at 4:1-2 ("[t]he undersigned attorney inquired about the absence of forensic evidence for the rifle").

the rifle was a firearm" as defined by 18 U.S.C. § 921(a)(3).[44] In January 2023 ATF took possession of the rifle so that an ATF certified firearms examiner could determine whether the rifle qualified as a "firearm" under the statute.[45] It was after the rifle was shipped in January 2023 that counsel for Defendant first inquired into the possibility of DNA testing on that firearm.[46] However, after the rifle left the LVMPD laboratory it "could no longer be tested consistent with" LVMPD laboratory protocols.[47] The government states that while Defendant never sought to test the rifle or bag, the government is treating Defendant's instant Motion as such a request, and has submitted the black bag for DNA testing and comparison.[48]

Although Defendant argues he did not need to make a request for testing to establish the government's appreciation of its evidentiary value,[49] Defendant cites no authority establishing LVMPD's affirmative obligation to conduct DNA testing in the absence of apparent exculpatory evidence. In *Youngblood*, the Supreme Court stated that "police do not have a constitutional duty to perform any particular tests."[50] Defendant fails to address that his alleged due process violation is based on "potentially useful evidence"; that is, what DNA testing could or might show—an insufficient basis to establish the violation he proffers.[51] If the rifle was tested and the evidence was exculpatory, there is no dispute that the government would be required to turn that evidence over to Defendant. However, the government is not required to test evidence when the facts and circumstance do not support the apparent exculpatory nature of the evidence.[52]

The facts do not support the finding that the rifle or black bag in which the rifle was found contained apparent exculpatory evidence.[53] Indeed, the evidence Metro had at the time of

---

[44] ECF No. 31 at 4.
[45] *Id*. at 7.
[46] *Id*.
[47] *Id*.
[48] *Id*. at 7-8, 13. The government admits DNA testing on the rifle is unlikely to yield any reliable results. *Id*. at 7 n.2.
[49] ECF No. 32 at 3.
[50] *Youngblood*, 488 U.S. at 59.
[51] *Id*. at 57; *Nicolaas*, 2013 WL 4519603 at *3; *Martinez-Martinez*, 369 F.3d at 1087.
[52] *Martinez-Martinez*, 369 F.3d at 1087 ("[T]he fact that the evidence may have proven exculpatory … does not render it per se material."). *Portee*, 2011 WL 4079055 at *2 *citing Youngblood*, 488 U.S. at 57. ("The exculpatory value of the evidence must be 'apparent'; the possibility that evidence could have exculpated a defendant if preserved and tested is insufficient to satisfy the standard of constitutional materiality in *Trombetta*.).
[53] *See* ECF No. 28-2.

Defendant's arrest, and through the date of this Order, includes a series of pictures showing, over a short period of time, Defendant carrying a black bag down the outdoor corridor of the Economy Hotel, Defendant with a pistol in the same hallway, Defendant shooting a pistol from the same hallway, and a black bag on top of a pistol in the boiler room of the hotel.[54]  This evidence supports the inference that DNA testing was substantially unlikely to yield exculpatory evidence.[55]  This evidence does not support the conclusion that there was apparent exculpatory evidence on the rifle inside the black bag.  Defendant seeks to impose an affirmative duty to conduct DNA tests despite the lack of apparent exculpatory evidence on the rifle or black bag (which is now being tested).  Nothing about the conduct of the LVMPD demonstrates officers acted in bad faith when they did not swab the rifle for DNA.  There is no evidence supporting the conclusion Metro was motivated by "official animus" towards Defendant or made "a conscious effort to suppress exculpatory evidence" that apparently existed.[56]  There is a clear difference between Defendant's contention of evidentiary value and  that "no more can be said than … [the rifle] could have been subjected to tests, the results of which might have exonerated the [D]efendant."[57]

---

[54]     *Id*.

[55]     *Id.*

[56]     *Trombetta*, 467 U.S. at 488.  The Court notes that in Defendant's Reply he points to the evidence bag contining the rifle.  ECF No. 32 at 3.  Defendant points to the writing on the front of the bag and that the bag not sealed for approximately two months while in LVMPD custody.  *Id*.  Defendant's raises arguments relating to the writing on the evidence bag for the first time in his Reply brief.  *Compare* ECF Nos. 28 and 32.  Defendant says, in Reply, the markings on the evidence bag ("*DNA*") demonstrates Metro knew the "rifle had evidentiary value."  The Court does not need to consider an argument raised for the first time in a reply brief.  *U.S. v. Mathur*, Case No. 2:11-cr-00312-MMD-PAL, 2012 WL 4742833, at *15 (D. Nev. Sept. 13, 2012); *Acacia Corporate Management, LLC v. U.S.*, Case No. CIV F-07-1129 AWI GSA, 2010 WL 3766706, at *2 (E.D. Cal. Sept. 21, 2012).  Indeed, all Defendant says in his moving papers is "[t]he fact the black bag, rifle, and rifle magazine were collected as evidence demonstrates the government was keenly aware of their evidentiary value back on September 1, 2022."  ECF No. 28 at 8.  Defendant does not address the fact that the pistol was DNA tested while the evidence bag containing the pistol does not bear the "*DNA*" marking to which Defendant points thus undermining Defendant's contention that marking on an evidence bag demonstrates Metro believed there was "apparent exculpatory" evidence on the rifle.  Defendant does not address the government's argument that the absence of his DNA on the rifle does not mean Defendant did not touch the rifle.  Defendant argues all the government has with respect to his possession of the rifle is "highly circumstantial." ECF No. 32 at 4.  The totality of the evidence discussed by Defendant does not demonstrate "official animus" toward Defendant or a "conscious effort" to suppress *exculpatory* evidence that was *apparent*.  Knowledge of evidence that may have value is not enough to demonstrate bad faith.  *Drake*, 543 F.3d at 1089.  There must be *apparent exculpatory* evidentiary value that was lost or destroyed in order to establish bad faith.  *Martinez-Martinez*, 369 F.3d at 1087; *Uvari*, 2020 WL 7873067, at *3 ("For evidence to be materially exculpatory, its exculpatory nature must be *apparent*.") (emphasis added; citations omitted); *Sivilla*, 714 F.3d at 1172 *citing United States v. Del Toro-Barboza*, 673 F.3d 1136, 1149 (9th Cir. 2012); *Portee*, 2011 WL 4079055 at *2 *citing Youngblood*, 488 U.S. at 57; *Hernandez*, 109 F.3d at 1455 ("The mere failure to preserve evidence which could have been subjected to tests which might have exonerated the defendant does not constitute a due process violation.") (citations omitted).

[57]     *Youngblood*, 488 U.S. at 57.

Based on the foregoing, the Court finds the facts do not support a recommendation to dismiss Defendant's charge of possession of a rifle based on spoliation of evidence.[58]

### C. After Balancing The Quality Of Government Conduct Against Prejudice To Defendant The Court Finds An Adverse Jury Instruction Is Not Warranted.

When deciding whether a remedial jury instruction should be given the Court balances the quality of the government's conduct against prejudice to Defendant.[59] The Court evaluates government conduct by determining whether (1) the evidence was lost or destroyed while in the government's custody, (2) the government acted in disregard for the interest of the accused, (3) the government was negligent in failing to adhere to established and reasonable standards of care for police and prosecutorial functions, (4) the acts were deliberate and, if so, were they done in good faith or with reasonable justification, and (5) government attorneys prosecuting the case participated in the events leading to the loss or destruction of evidence.[60] When evaluating prejudice to the defendant, the Court considers: "the centrality of the evidence to the case and its importance in establishing the elements of the crime or the motive or intent of the defendant; the probative value and reliability of the secondary or substitute evidence; the nature and probable weight of the factual inferences or other demonstrations and kinds of proof allegedly lost to the accused; [and] the probable effect on the jury from absence of the evidence …."[61]

Defendant's Motion and Reply offer relatively little analysis of the balancing test described above.[62] While Defendant requested the outcome of DNA testing by the government under Federal Rule of Criminal Procedure 16(a)(1)(E),[63] this argument ignores that there was no obligation to

---

[58] The Court notes that to warrant "an evidentiary hearing, a defendant must make a colorable showing that the government destroyed evidence to prevent the disclosure of favorable evidence to the defense, or that the exculpatory value of the evidence was apparent." *United States v. Uvari*, Case No. 2:18-cr-00253-APG-NJK, 2020 WL 7873067, at *4 (D. Nev. Nov. 17, 2020). Because the Court finds neither the destruction of favorable evidence nor the existence of evidence of apparent exculpatory value, the Court finds no evidentiary hearing is required. Further, because the Court finds no bad faith, it does not discuss the possibility of comparable evidence. Nonetheless, the Court notes the black bag has been submitted for DNA testing (ECF No. 31 at 8) and substantial video/photographic footage, the authenticity of which has not been challenged, is available to Defendant.
[59] *Sivilla*, 714 F.3d at 1174 *citing United States v. Loud Hawk*, 628 F.2d 1139, 1152 (9th Cir.) (en banc) rev'd on other grounds *U.S. v. W.R. Grace*, 526 F.3d 499, 502 (9th Cir. 2008).
[60] *Id*. at 1173 *citing id*.
[61] *Id*.
[62] ECF Nos. 28 at 8-9; 32 at 7-8.
[63] ECF No. 28 at 7.

8

conduct such tests in the absence of apparent exculpatory evidence. And, Defendant does not argue he sought access to the rifle so he could conduct his own DNA tests at any time after his indictment in November 2022.[64] Defendant also does not dispute the black bag is currently being DNA tested.[65] Thus, until the results from the DNA tests on the black bag are available, there is nothing for the government to produce under Rule 16(a)(1)(E).

Further, the government contends DNA evidence is not central to its case-in-chief at trial.[66] Indeed, as discussed above, no evidence exists demonstrating Defendant's DNA is on the rifle he is currently charged with possessing, so it would be impossible for the government to use this information in its case-in-chief. Further, if Defendant's DNA was on the rifle it would not be material to his defense. The absence of DNA evidence tying Defendant to the rifle is available to Defendant in preparation for his defense. Once the DNA testing on the black bag is concluded, Defendant will receive the results and can determine whether it is helpful to his defense.

After presenting his argument under Fed. R. Crim. P. 16(a)(1)(E), Defendant turns to the standard established by case law for assessing whether an adverse inference is properly given.[67]

1. The black bag and rifle were in LVMPD's custody until January 2023 when they were shipped to ATF for purposes of determining whether the rifle is a "firearm" as defined by federal statute.[68] The rifle and bag remain with the ATF.[69] At the government's request, the black bag is being DNA tested for comparison to Defendant's DNA; however, results of these tests were not available as of the government's filing its Response to Defendant's Motion.[70] The government concedes meaningful results from DNA testing on the rifle are unlikely.[71]

In his Reply, Defendant contends for the first time that DNA evidence was destroyed because the label on the evidence bag for the rifle, ammunition, and rifle magazine were in LVMPD's

---

[64] Defendant says only that he "inquired about the absence of any forensic evidence for the rifle … and the black bag …." ECF No. 28 at 4.
[65] ECF No. 31 at 8.
[66] *Id*. at 13.
[67] ECF No. 28 at 7-9.
[68] ECF No. 31 at 7.
[69] *Id*. at 8.
[70] *Id*.
[71] *Id*. at 7 n.2.

possession as of September 1, 2022, but the evidence bag was not sealed until November 9, 2022.[72] Defendant is not charged with possession of ammunition or magazines.[73] Thus, the Court sets aside this portion of Defendant's argument. Defendant also argues a negative test on the rifle would bolster his defense that he did not possess the rifle.[74] This is true, but there is no evidence any DNA was on the rifle. Further, Defendant is able to argue no testing was done on the rifle by Metro and that there is no DNA evidence tying him to this firearm. Moreover, what evidence there is indicates it is doubtful that DNA testing of the rifle would produce exculpatory evidence.[75] Finally, there is also no evidence that DNA on the black bag was destroyed as this piece of evidence is presently being tested. Thus, while this factor does not entirely favor the government, the totality of events are insufficient to warrant issuing a remedial jury instruction.

2. The Court finds there is no evidence supporting the contention that the government acted with disregard for Defendant's interest.[76] The government played no role in the handling of the rifle or black bag while it was in LVMPD's possession. The government did ship the rifle to the ATF to determine if the rifle qualifies as a firearm. The government is testing the bag for DNA comparison. If the rifle does not qualify as a firearm, the charge pertaining to Defendant's possession of the rifle will presumably be dropped. These governmental acts are contrary to Defendant's contention of disregard for his interest.

3. Defendant does not present argument that the government was negligent in failing to adhere to established and reasonable standards of care for police and prosecutorial functions. Defendant offers nothing showing the government was responsible for or played any role in how evidence was handled by Metro.[77] To the extent Metro's alleged failure to seal the evidence bag was a failure to adhere to standards of care, there is nothing demonstrating this destroyed exculpatory

---

[72] ECF No. 32 at 5.
[73] ECF No. 14.
[74] ECF No. 32 at 8.
[75] ECF No. 31 at 2-4; *United States v. Perez*, Case No. 21-50166, 2023 WL 4491751, at *3 (9th Cir. July 12, 2021) (recognizing neither the government nor law enforcement played a role in the loss of evidence, the court nonetheless considered prejudice to the defendant finding it was doubtful the evidence lost would have been exculpatory); *Uvari*, 2020 WL 7873067, at *5 (analyzing a request for a remedial jury instruction).
[76] *Uvari*, 2020 WL 7873067, at *5; *U.S. v. Hylton*, Case No. 2:17-cr-00086-HDM-NJK, 2020 WL 4516914, at *5 (D. Nev. Apr. 22, 2020).
[77] *Hylton*, 2020 WL 4516914, at *5.

evidence. To the extent the government directed the shipping of the rifle to ATF it did so to determine if Defendant is properly charged. The government is currently testing the black bag for DNA the outcome of which, if it is exculpatory, will further undermine Defendant's argument.

4. There is no evidence that any act by the government about which Defendant complains was for the purpose of disadvantaging Defendant. Indeed, Defendant says nothing about the way the black bag was handled while in police custody and says nothing to demonstrate Metro's failure to seal the evidence bag containing the rifle was purposeful. There is no evidence the government was involved in any events involving the rifle or black bag while they were in Metro's custody. The government did ship the rifle to the ATF to determine if the rifle is a firearm. There is no basis under any argument presented to find this act was done other than in good faith. The government is testing the black bag for DNA comparison evidence consistent with the conclusion that the government is acting in good faith.

5. While in Metro's custody, the evidence bag containing the rifle was not sealed between September 1, and November 9, 2022. Metro also dropped the rifle on the floor when preparing to ship it to ATF. There is no evidence whatsoever that the government participated in these events or that these events were done for the purpose of prejudicing Defendant.

Looking next to whether Defendant was prejudiced, he repeats the argument that DNA testing is central to his defense.[78] This necessarily requires the unsupported conclusion that testing results would have helped exonerate Defendant when, in fact, the available evidence is to the contrary. The absence of DNA evidence allows Defendant to argue there is insufficient evidence to demonstrate beyond a reasonable doubt he possessed the rifle. Further, whether Defendant's DNA is or is not discovered on the black bag will be disclosed once the results are in. If the evidence is favorable to Defendant he will undoubtedly use this in his defense. If the result of DNA testing on the bag is unfavorable to Defendant prejudice is substantially diminished. Whether the jury is more

---

[78] *Id*.; *Perez*, 2023 WL 4491751, at *3.

persuaded by circumstantial evidence than the absence of DNA evidence on the rifle, and potentially the bag, is within the jury's common province.[79]

The Court finds the record does not support a finding that the government's conduct in this case was such that prejudice to Defendant requires remediation through an adverse inference instruction to the jury.

### III. Recommendation

IT IS THEREFORE RECOMMENDED that Defendant's Motion to Dismiss for Spoliation of Evidence (ECF No. 28) be DENIED.

Dated this 25th day of July, 2023.

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

### NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

---

[79] *Hylton*, 2020 WL 4516914, at *5; *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (it is within the province of the jury "to resolve conflicts …, … weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.").